# United States District Court
# District of New Jersey

*Elizabeth T. Foster, Attorney at Law, LLC*
*NJ Bar 009152006*
*22 E. Quackenbush Ave.*
*Dumont, NJ  07628*
*201 290 5761*
*201 215 9574 (fax)*
*Attorney for Plaintiff*

--------------------------------

Marnie Morales,
Plaintiff
V.

Carrolls Corp.                         Civ. No. _____
Defendant
==================

1. Plaintiff, Marnie Morales, for her complaint, states:

Jurisdiction and Parties

2.  Plaintiff is a resident of Bergen County NJ.

3. Carrolls Corp. is headquartered in Syracuse, New York.

3a.  Jurisdiction is proper based on diversity of the parties pursuant to 28 U.S. Code § 1332.

Facts

4. Plaintiff was employed as assistant manager by Carrolls Corp., a company based in Syracuse New York that owns about 800 Burger King Restaurants including in Essex County, NJ.

5. Plaintiff previously worked for Mega Corp, having started her employment in 1999.

6. Mega sold its BK stores to Carrolls.

7. Plaintiff worked for Mega Corp. for many years,  being promoted several times and eventually becoming a store manager.

8. Plaintiff was downsized from her position at Mega but was rehired after the business was sold to Carrolls.

9. Plaintiff was an excellent employee and received awards.

10. According to Marnie's training, in order to be correctly staffed, a store must have at least three people working.

11. Yet, Marnie was expected to work by herself at night, exposing her to danger. In addition, although she was a manager, she was not functioning as a manager when she had to work alone, instead she was doing the work of a manager and an hourly employee.

12. Marnie routinely had to stay til 1 AM and later, working to clean the store because of this egregious understaffing.

13. When the store is properly staffed, it can be cleaned in 20-25 minutes and the staff can leave at a decent hour.

14. In April 2017, Marnie was written up for comments she made to a young woman whom she supervised. This young woman behaved poorly and bullied another worker, for which Marnie counseled her. Specifically, this employee called her coworker a cow. This is not acceptable behavior.

15. The same employee has also behaved very flirtatiously with another employee. Plaintiff counseled her about this also.

16. Despite doing her job to manage employee behavior, Marnie was written up for mistreating this young woman. Marnie never mistreated her, but no one bothered to investigate and ask Marnie what happened. As the manager and a long term Burger King employee, Marnie deserved and was entitled to that consideration.

16. She was told to sign the letter that reprimanded her, but she resisted because she disagreed with the way the letter described her actions, and she denied doing anything wrong.

17. Particularly unbelievable was the statement in the letter that this young woman did not feel safe in her presence. Plaintiff has never behaved in a threatening manner to

any employee, as her long term of successful service to Burger King would seem to indicate.

18.  Shortly after this, plaintiff was summoned to another meeting and Khalil demanded that she sign yet another letter, thrusting it at her and demanding that she sign before she was even able to read it.

19.  This letter claimed that she shut the shake machine off early and cost the company shake sales.  Her punishment was a week's suspension without pay.

20.  Plaintiff had never been suspended before and she has never heard of anyone being suspended for something as minor as this.  Managers at other stores have shut the shake machine down early but have not been punished for this, as it is done when the store is short handed.

21.  This treatment was not commensurate with that expected for a loyal and successful employee.

22. Although the plaintiff complained many times to HR about the understaffing, and was promised that the issue would be solved, it never was.

23. Due to the unwarranted harassment she suffered, plaintiff became ill.  She suffered high blood pressure spikes and had to be treated by her doctor.

24. Plaintiff is Hispanic and noticed that Hispanic workers were mistreated and harassed.

25.  When she raised this issue with her managers, she was told that interviews were done and other employees did not feel harassed, however, she pointed out that the Hispanic workers were not interviewed nor asked for their opinion as to whether they felt harassed.

26. The young female employee whom plaintiff is accused of harassing is Indian or Pakistani, and plaintiff believes she was favored over the plaintiff who is Hispanic, and this is why the plaintiff got in trouble for counseling her.

27.  The new managers who took over after Carroll bought the stores from Mega are Indian/Pakistani, and they mistreat Hispanic workers.

28. When they interviewed the workers about how Marnie handled the staff, they failed to interview the Hispanic workers.

29. Plaintiff was wrongly demoted and her salary was cut, this is due to being Hispanic.

30. When demoted, she expected to be able to control her schedule so she could better manage her health, but instead she had exactly the same problem as when she was a manager, she had to find people to do her job when she was not available. This should not be the case for an assistant manager, only a manager.

31. Marnie was overlooked for training positions and was asked to provide training to employees without her being assigned the proper title.

32. A non Hispanic manager used to leave early, putting the burden on plaintiff to cover for her, even though the plaintiff was often forced to work later than she was supposed to.

33. After Marnie was terminated, two other Hispanic workers were terminated and one had worked for BK for 8 years.

Count I--Hostile Environment --NJLAD Violation

34. Plaintiff is Hispanic and due to her race/national origin (Puerto Rican) she was mistreated and made to suffer on a daily basis.

35. Plaintiff was forced to work in the store alone late at night doing the work of non-managers even though she is a manager.

36. Plaintiff was wrongfully suspended. After that, the staff had no respect for her because she was not being treated like management.

37. A reasonable person in plaintiff's position would find the harassment she suffered due to her race and national origin was severe or pervasive and altered the terms and conditions of her employment.

Count II--Termination Based on Retaliation Due to Complaints about Race/National Origin in Violation of NJLAD

38. The plaintiff is Hispanic and was born in Puerto Rico.

39. She was treated differently due to her race.

40. When she complained that she was treated differently due to her race, she was terminated.

41. Other workers who were not Hispanic were treated better and favored over the plaintiff. The Indian / Pakistani workers were not expected to stay late and were preferred for the better, earlier shift times. Hispanic employees were directed to stay late.

DAMAGES

42. Plaintiff has suffered lost wages, deteriorating health, and emotional distress due to defendant's illegal treatment of her as described above. Defendant's knowing and willful illegal treatment of plaintiff makes punitive damages appropriate.

Wherefore, plaintiff demands judgment and damages as prescribed under the statutes, and such other and further relief as the court deems proper.

JURY DEMAND

Plaintiff demands a trial by jury.

Statement of No Other Parties

Plaintiff, by and through her undersigned attorney, certifies that she is aware of no other parties who should be joined in this action.

Dated: June 11, 2018                                        /s/Elizabeth T. Foster
                                                            Attorney for Plaintiff